**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 23-cr-437 (RBW)** |
| **ROBIN REIERSON,** | |
| **Defendant.** | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Robin Reierson to 27 months of imprisonment, at the midpoint of the applicable guidelines range of 24-30 months. The government also recommends that this Court impose three years of supervised release, $2,000 in restitution, a fine, and a $100 special assessment.

## I.      INTRODUCTION

The defendant, Robin Reierson, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and

Reierson, a retired welding group leader, physically resisted Metropolitan Police Department ("MPD") officers assembled on the West Plaza and later assaulted an officer at that location, including grabbing on to the officer's service baton. Reierson's most egregious conduct occurred between 2:06 p.m. and 2:30 p.m.—a critical time period on January 6, which encompassed the first breach of the Capitol Building by the Senate Wing Door at 2:12 p.m., and Vice President Pence's evacuation from his Senate Office at 2:25 p.m.

The government recommends that the Court sentence Reierson to 27 months of incarceration for his conviction of violating 18 U.S.C. 111(a). A 27-month sentence reflects the gravity of Reierson's conduct, but also acknowledges his early admission of guilt.

## II.     FACTUAL BACKGROUND

### A.     The January 6, 2021 Attack on the Capitol

The government refers the Court to the stipulated Statement of Offense filed in this case, Doc. 1-1, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B.     Reierson's Role in the January 6, 2021 Attack on the Capitol

On January 5, 2021, Reierson drove to Washington, D.C. from his home outside of Chicago, Illinois to attend former President Trump's "Stop the Steal" rally. He stayed overnight at a hotel in Arlington, Virginia, and then came into Washington, D.C. on the morning of January 6,

---

is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

2021. That morning, he attended the rally and then walked on foot from the area around the Washington Monument towards the U.S. Capitol Building.

As he approached the Capitol Building on the west side, Reierson chanted "Stop the Steal" with the crowd. He eventually positioned himself in front of an established police line maintained by U.S. Capitol Police (USCP) and Metropolitan Police Department (MPD) officers who had formed a police line around the West Plaza to prevent rioters' entry into the terracing of the Capitol building. At approximately 2:06 p.m., the defendant used his back and body to push against a bike rack barrier and into the line of assembled officers. *See* Image 1.



*Image 1: Open-source video showing Reierson (circled in yellow) along the police line.*

The police line began to fall at approximately 2:25 p.m. Minutes later, at approximately 2:30 p.m., the defendant physically pushed against officers using both of his hands and by lowering his shoulder into officers. *See* Images 2 and 3. The defendant also attempted to take hold of MPD Officer B.R.'s baton. *See* Images 3 and 4.

3



*Image 2: Body worn camera showing Reierson (circled in red) pushing a police officer.*



*Image 3: Body worn camera showing Reierson (circled in yellow) lowering his shoulder into officers*



*Image 4: Body worn camera showing Reierson reaching for an officer's baton (circled in red)*



*Image 5: Body worn camera showing Reierson reaching for an officer's baton (circled in red)*

The defendant eventually withdrew from the confrontation between rioters and officers, but as he left the West Plaza, he told other rioters, "don't stop, keep going" and "put the cameras down, keep going." Reierson then walked away from the Capitol with his motorcycle-style helmet in hand. *See* Image 6.



*Image 6: Reierson retreating from the Capitol Building with helmet in hand*

## III.   THE CHARGES AND PLEA AGREEMENT

On December 13, 2023, a federal grand jury returned an indictment charging Reierson with seven counts, including, assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a). On July 1, 2024, Reierson was convicted of that offense based on a guilty plea entered pursuant to a plea agreement.

## IV.   STATUTORY PENALTIES

Reierson now faces sentencing for Count Two of the indictment, for assaulting, resisting,

or impeding certain officers, in violation of 18 U.S.C. § 111(a).

As noted by the plea agreement and the Presentence Report issued by the U.S. Probation Office, the defendant faces up to eight years of incarceration, three years of supervised release, a fine of up to $250,000, restitution, and a mandatory special assessment of $100.

## V.     THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

Here, the government agrees with the Sentencing Guidelines calculation contained within the PSR at paragraphs 31 through 41:

Count Two: 18 U.S.C. § 111(a)(1)

| | | |
|---|---|---|
| U.S.S.G. § 2A2.2(a)[2] | Base Offense Level | 14 |
| U.S.S.G. § 3A1.2(b) | Official Victim | +6 |
| | Total | 20 |
| Acceptance of responsibility (U.S.S.G. §3E1.1) | | -3 |
| **Total Adjusted Offense Level:** | | **17** |

*See* Plea Agreement at 3; *see also* PSR ¶¶ 31-41.

The parties agreed in the plea agreement that Section 4C1.1 does not apply in this case, because the defendant used violence or credible threats of violence in connection with the offense. *See* Plea Agreement at 4; *see also* U.S.S.G. § 4C1.1(a)(3).

---

[2] By cross-reference from U.S.S.G. § 2A2.4(c)(1) (Obstructing or Impeding Officers), which directs that Section § 2A2.2 (Aggravated Assault) be applied if the conduct constituted aggravated assault.

The U.S. Probation Office calculated the defendant's criminal history as category I, which is not disputed. PSR ¶ 44. Accordingly, based on the agreed-to calculation of the defendant's total adjusted offense level, after acceptance of responsibility, at 17, Reierson's Guidelines range is 24 to 30 months' imprisonment.

## VI.   SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.   Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Reierson's violent conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. While elected representatives, including the former Vice President, were sheltering in place or being evacuated to secure locations within the Capitol complex, Reierson assaulted the Metropolitan Police Department officers who were attempting to keep rioters contained and outside of the building. The nature and circumstances of Reierson's offense were of the utmost seriousness, and fully support the government's recommended sentence of 27 months of incarceration.

### B.   The History and Characteristics of the Defendant

The defendant is a now-retired, highly skilled welder at Argonne National Laboratories in Illinois. He is married and has one adult child. Reierson did not report any history of alcohol or substance abuse to the Probation Officer, nor any mental or emotional health issues. Reierson is 69 years old, which the Court may take into account as a mitigating factor. Reierson's age,

however, did not stop him on January 6 from physically assaulting police while wearing a motorcycle helmet for protection. Other courts in this district have sentenced other January 6 defendants over sixty-five to custodial sentences. *See, e.g.*, *United States v. Howard Johnson*, 21-cr-721 (CKK) (convicted of assaulting certain officers in violation of 18 U.S.C. § 111(a); sentenced to 46 months of incarceration); *United States v. Albert Ciarpelli*, 23-cr-98 (CKK) (convicted of entering or remaining in a restricted building or grounds in violation of § 1752(a)(1); sentenced to 90 days of incarceration).

Reierson has enjoyed stable employment and economic comfort. The prosperity that he has enjoyed in his adult life makes his willingness to join a violent riot all the more troubling.

**C.     The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Reierson's criminal conduct on January 6 was the epitome of disrespect for the law. *See, e.g.*, *United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.").

**D.     The Need for the Sentence to Afford Adequate Deterrence**

***General Deterrence***

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving

domestic terrorism, which the breach of the Capitol certainly was.[3] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

### *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. Reierson's conduct evinced his willingness to engage in serious political violence against sworn officers defending the U.S. Capitol and the elected officials operating within it. Though the government acknowledges Reierson's strong statement of remorse to his Probation Officer, *see* PSR ¶ 30, a term of incarceration reflecting the unconscionability of such an attack is necessary and appropriate here to ensure that Reierson does not engage in such conduct again in the future.

### E.      The Importance of the Guidelines

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national

---

[3]  *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.    Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar *conduct*" (emphasis added). So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have

sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[4] "When an offense is uniquely serious, courts will consider the need to impose stiffer sentences that justify the risk of potential disparities." *United States v. Mattea*, 895 F.3d 762, 768–69 (D.C. Cir. 2018) (cleaned up).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.[5] While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

Reierson's conduct is comparable to that of Jacob Zerkle, 22-cr-100 (RBW). Zerkle also assaulted MPD officers on the west plaza, specifically members of Civil Disorder Unit 42, which had arrived at the Capitol to reinforce and defend the building and its occupants. Like Reierson, Zerkle pled guilty to assaulting officers, in violation of § 111(a), as well as interfering with officers during a civil disorder, in violation of § 231(a)(3). Their conduct – assaulting officers with their bodies, but without dangerous weapons – was very similar. At sentencing, the Court determined

---

[4] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

[5] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

that Zerkle's guidelines range was also 24-30 months, based on a similar guidelines calculation as is present here, and this Court sentenced Zerkle to 24 months of incarceration.

Another comparable West Plaza assault of police officers occurred in *United States v. Copeland*, 21-cr-570 (APM), where the defendant fought with officers on the West Plaza by engaging in a push-and-pull struggle over bike rack barricades used by officers on the West Plaza to establish their police line, and he attempted to use the bike racks as a weapon by thrusting them onto officers. While Copeland attempted to use a large, metal object to injure officers, his conduct is also comparable to Reierson's in that he did not enter the Capitol building but nonetheless assaulted multiple officers on the west front of Capitol grounds. Judge Mehta sentenced Copeland to 36 months' incarceration, with a recommended Guidelines Range of 46 to 57 months.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[6] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering

---

[6] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The victim in this case, Officer B.R., did not suffer bodily injury as a result of Reierson's assault. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Reierson must pay $2,000 in restitution, which reflects in part the role Reierson played in the riot on January 6.[7] Plea Agreement at 8-9. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Reierson's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 139.

## VIII.   FINE

The defendant's convictions for violations of 18 U.S.C. § 111(a) subject him to a statutory maximum fine of $250,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not

---

[7] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, Reierson has considerable assets and is able to pay a fine. Pursuant to the considerations outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine and should do so in this case. § 5E1.2(a), (e). The guidelines fine range here is $10,000 to $95,000. U.S.S.G. § 5E1.2(c).

## IX.    CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 26 months of imprisonment, at the midpoint of the applicable guidelines range, three years of supervised release, $2,000 in restitution, a fine, and a $100 special assessment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:    */s/ Katherine E. Boyles*
KATHERINE E. BOYLES
Assistant U.S. Attorney
D. Conn. Fed. Bar No. PHV20325
601 D Street, N.W.
Washington, D.C. 20579
(203) 931-5088
Katherine.boyles@usdoj.gov

15