UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff )<br>vs. )<br>)<br>ROBIN L. REIERSON, )<br>)<br>Defendant. ) | Case No. 1:23-cr-00437<br><br>Judge Reggie B. Walton |

**DEFENDANT ROBIN REIERSON'S SENTENCING MEMORANDUM**

Defendant, Robin Reierson ("Mr. Reierson"), by and through his undersigned counsel, submits the following Sentencing Memorandum:

**I.     INTRODUCTION**

Mr. Reierson is a 69-year-old husband and father. He has a decades long history of law-abiding conduct, gainful employment, and active participation in his community. He is a peaceful, non-violent man, with absolutely no material criminal history. He demonstrated a gross lapse in judgment on January 6, 2021, when his own actions went from a peaceful and lawful expression of his First Amendment Rights, to obviously breaking the law. He remains deeply remorseful for his actions, particularly in light of the extreme impact of his and the others' conduct upon those brave members of law enforcement who were simply trying to do their jobs and to protect the democratic process.

However, as detailed below, after considering the 3553 factors, including Mr. Reierson's age, his long history of service to the community, his close family ties and responsibilities, his decades of successful gainful employment, and his lack of criminal history, it is appropriate under the unique circumstances he presents, for this Court to impose a non-BOP custodial

sentence, including one of home confinement, with a period of supervised release deemed appropriate by this Court.

## II. OBJECTIONS TO THE PSR

Mr. Reierson previously timely submitted several corrections solely directed to the financial information included in the PSR. He does not have any other requested material changes or revisions.

## III. PROCEDURAL BACKGROUND

On July 1, 2024, Mr. Reierson pled guilty to Count 2 of the Indictment, pursuant to a written Plea Agreement. Count 2 charged him with assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1). Fortunately, no one was physically injured by his own particular actions.

The PSR applied the 2023 Guidelines and preliminarily determined the Total Offense Level for Count 2 to be 17, and Mr. Reierson's Criminal History category to be I. This results in a suggested Guidelines range of 24 to 30 months.

The Total Offense Level includes a 6-level enhancement, pursuant to §3A1.2(a)(1), because the victim was a Government officer. The Total Offense Level also includes a combined 3-level reduction for acceptance of responsibility under §§3E1.1(a) and 3E1.1(b).

As set forth below, a non-BOP custodial sentence, including one of home confinement for a term far below the suggested Guidelines would clearly fulfill all of the legitimate aims of sentencing. A Guidelines sentence, particularly of the duration rotely urged by the Government, would be far *greater than* necessary to satisfy any of the legitimate aims of sentencing, and in light of the 3553 factors.

IV.     **PERSONAL BACKGROUND**

*Mr. Reierson's Personal Background*

Mr. Reierson is 69-years-old. He is a life-long resident of Illinois. He was born and raised in Elmhurst, Illinois, just west of Chicago. He grew up in a loving home with both his parents and two siblings. Mr. Reierson describes his childhood as "normal" and was actively involved in baseball and wrestling. He also enjoyed working on cars and motorcycles. His mother passed away in 1999 due to complications from cancer. Mr. Reierson's father passed away in 2013 at the age of 74 following a stroke. Mr. Reierson maintains a close relationship with his siblings.

Mr. Reierson has been married to Vikie Reierson for nearly twenty-five (25) years. They have a 21-year-old son (Adam) together, who resides with them and is employed at Argonne National Laboratory—Mr. Reierson's former employer.

In addition to his commitment to family, Mr. Reierson has a long history as a law-abiding, hard-working member of society. He earned his high school diploma from East Leyden High School (Chicago suburbs) in 1973, and pursued further education at Triton Junior College. He also developed specialized skills in welding, earning numerous certifications throughout his career.

For over 40 years, Mr. Reierson worked full-time, primarily as a Welding Group Leader, at Argonne National Laboratory ("Argonne'). He worked at Argonne from 1983 until his forced retirement in September 2023 arising out of the present prosecution. His dedication to his work was repeatedly recognized by Argonne, including by way of numerous commendations premised upon his work product, work ethic, workplace leadership, ingenuity, and willingness to step in and contribute under any circumstance presented. Mr. Reierson was viewed as a leader at

Argonne, and to say that he was highly regarded by management and his peers is an understatement. Even before his lengthy tenure at Argonne, he was employed at several companies in Illinois, where he similarly built a strong work ethic and professional reputation. This extensive employment history highlights his consistent commitment to being a responsible and productive citizen.

### *Mr. Reierson's Serious Medical Conditions*

A sentence of BOP custodial incarceration, and certainly one for any significant duration, would be unnecessary and would needlessly burden taxpayers, in light of Mr. Reierson's serious medical conditions. He recently underwent several critical medical procedures, including a catheter intervention in his heart in September 2023. Additionally, he suffers from an enlarged prostate, elevated PSA levels indicating a potential risk of prostate cancer, coronary artery disease, and a history of kidney stones. Mr. Reierson also takes numerous medications to manage his blood pressure, prostate health, cholesterol, and urination, which require careful monitoring by multiple specialists.

Any period of BOP custodial incarceration could severely compromise his ability to receive necessary medical care, particularly given the complexity of his health issues and the ongoing treatments prescribed by his doctors. Furthermore, his family history of diabetes and heart issues suggests that his health might deteriorate further if he is not provided with adequate care. Given his documented medical needs, incarceration could jeopardize his well-being and may lead to further complications, making any BOP custodial sentence unnecessary, a burden upon the BOP health care system, and an unnecessary financial burden upon the BOP and taxpayers.

*Letters of Support*

As the attached letters of support (*see* Exhibit) make abundantly clear, Mr. Reierson has received an outpouring of support from family, friends, community members, and community leaders whose lives he has impacted in numerous positive ways over the course of decades. These letters collectively paint the complete and true picture of Mr. Reierson as a compassionate, hardworking, and selfless man who has made significant positive contributions to his family, friends, and community. Each letter underscores Mr. Reierson's strong moral character and the far-reaching impact of his actions upon the people around him. To illustrate from just a small sampling of these letters:

In his letter, his son, Adam, describes Mr. Reierson as a hardworking, compassionate, and selfless man who has dedicated his life to helping others. As Adam describes, his father has always prioritized helping neighbors, friends, and even strangers, whether fixing items, offering financial support, or providing a listening ear. Adam notes his father's generosity, unwavering faith, and the influence he has had on him, shaping him into the man he is today. Adam reflects on how this past year has been incredibly difficult for their family, and notes that his father's absence would affect not only their family but the community that relies on Mr. Reierson.

Another letter is from Joyce Benefield, who has known Mr. Reierson for nearly 60 years, and considers him like a brother. She describes Mr. Reierson as trustworthy, selfless, and always willing to help others, even when so doing interrupted his own vacations. She related that he has worked tirelessly, including during his long career at Argonne. Ms. Benefield notes that Mr. Reierson has a deep faith, regularly attending Bible studies and sharing his devotion with others.

She also emphasizes his consistent honesty, kindness, and readiness to serve others throughout his life, advocating for leniency and mercy on his behalf.

In yet another letter, Retired Chicago Police Officer Dale Borchardt writes about his long friendship with Mr. Reierson, describing him as a man of exceptional character and integrity. Officer Borchardt underscores that Mr. Reierson is deeply empathetic, often stopping to pray with and for others, including complete strangers. Officer Borchardt has personally experienced Mr. Reierson's support during difficult times, and he attests to Mr. Reierson's admiration for law enforcement and his generosity toward families of fallen officers. He also highlights Mr. Reierson's kind, selfless nature.

Dr. Kinzler, a doctor and friend of Mr. Reierson for more 10 years, praises him as a hard worker and devoted family man who has also been a consistent and committed volunteer in the community. He describes Mr. Reierson as "exceptional in character" and respectful of others. Dr. Kinzler further notes that Mr. Reierson's co-workers viewed him as honest and dependable. He Kinzler also indicates that, during the difficult time of this legal case, Mr. Reierson has remained humble, contrite, and repentant, asking only for forgiveness and prayers – and never displaying anger or self-righteousness.

Reverand Mayhak has known Mr. Reierson since childhood and reconnected with him 25 years ago. He speaks highly of Mr. Reierson's helpfulness, particularly in caring for his elderly aunt by shoveling snow and checking on her regularly. He describes Mr. Reierson as a loving husband, devoted father, and hard worker who was highly respected by his peers at Argonne. He emphasizes Mr. Reierson's involvement in his son's life and the community, including by way of Mr. Reierson's admirable volunteer service at the Pacific Garden Mission. He calls Mr. Reierson "honest, hard-working, caring, and responsible," with a strong sense of principles and generosity.

In another letter, United States Marine Lance Corporal Ojeda describes how he has known Mr. Reierson for more than 12 years and considers him to be a second father and a major influence in his life. He describes Mr. Reierson as calm, kind, and generous, and one who provided him with a place to stay. In fact, Mr. Reierson's strong work ethic and patriotism inspired Ojeda to serve in the Marine Corps. He praises Mr. Reierson as "one of the hardest working and kindest people" he has ever encountered – who is always willing to help others without expecting anything in return.

The Honorable Stanley Baran (retired) highlights Mr. Reierson's integrity and dedication, both in his personal life and during his 40-year career at Argonne, where high levels of security and responsibility were always required. He describes Mr. Reierson as a helpful and talented individual who has often aided his neighbors and friends. Judge Baran recalls how Mr. Reierson moved in to care for his elderly mother while continuing to work full-time. He also notes the pride Mr. Reierson takes in raising his son. Citing the belief in second chances, Judge Baran requests that this Court show Mr. Reierson mercy and afford him an opportunity for redemption.

These are just a few of the many, many letters submitted on behalf of Mr. Reierson by those who know him best. The themes of these letters are consistent – Mr. Reierson is as a man of strong moral character, deep compassion, and an unwavering commitment to family, work, and community. More importantly, these letters corroborate the reasonableness of a non-BOP sentence, including one of home confinement. Mr. Reierson has an opportunity to continue to positively impact the lives of his family, friends, and community that would be unnecessarily interrupted by a term of incarceration.

Mr. Reierson's counsel urges the Court to read the letters submitted in support of Mr. Reierson. They are <u>not</u> the run of the mill attempts that are often made to build up the

"character" of a defendant who may not be of the character represented. A review of the letters makes clear that there are legitimate and consistent themes associated with the life and character of Mr. Reierson. Most people would be honored to receive that type of support.

V.       **DEFENDANT'S VERSION OF THE OFFENSE**

Defendant has no intention of using this Sentencing Memo as a vehicle to make excuses for his obviously wrongful, misguided, and criminal behavior. Mr. Reierson has already readily admitted that he committed the instant offense by entering into a written Plea Agreement. Mr. Reierson already has, and will continue to, accept full responsibility for his actions and the offense conduct. During his allocution at the sentencing hearing, Mr. Reierson will make that plain and clear to this Court, in addition to expressing his deep-seated remorse, shame, and embarrassment for his actions – and his acknowledge of the grave consequences that arose out of his and others' actions during the January 6 riot.

However, to be clear, Mr. Reierson did *not* go to Washington D.C. with any preconceived idea or plan to engage in violence or criminal activity. He was *not* connected to any groups or individuals who were pitching or encouraging such an approach with respect to January 6. And, most importantly, he was certainly *not* someone who attempted to make public or social media statements after the fact in support of what he and the others did that day. It was exactly the opposite after those events – i.e., Mr. Reierson recognized and was ashamed of his and the others' conduct.

VI.      **DEFENDANT'S POSITION REGARDING SENTENCING**

This Court exercises broad discretion to determine a just and equitable sentence that punishes the individual offender, as opposed to just the crime. Additionally, the Guidelines are only *advisory* despite their seemingly mandatory language. *See, e.g., United States v. Booker*,

543 U.S. 220, 245 (2005). A District Court must therefore "consider Guidelines ranges," but is permitted "to tailor the sentence in light of other statutory concerns as well." *Id.* The Supreme Court in *Gall v. United States*, 552 U.S. 38 (2007), outlined the process to follow:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.

*Id.* at 49-50 (emphasis added) (citations omitted).

Thus, in fashioning an appropriate sentence, this Court must consider the Guidelines along with all of the other factors set forth in 18 U.S.C. § 3553(a), *see also Booker*, *supra*, 543 U.S. at 260, and treat the Guidelines "as one factor among several" that section 3553(a) requires courts to consider. *See Kimbrough v. United States*, 552 U.S. 85, 90 (2007).

Additionally, pursuant to 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence." Further, under 18 U.S.C. § 3582, this Court, in considering the factors in § 3553(a) and their applicability, should recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation." *See* 18 U.S.C. § 3582(a).

Although the Guidelines range will sometimes align with the objectives of the section 3553 factors, that is not always the case. As the Supreme Court noted in *Kimbrough*:

> [I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. The sentencing judge, on the other hand, has greater familiarity with the individual case and the individual defendant before him than the Commission

> or the appeals court. He is therefore in a superior position to find facts and judge their import under § 3553(a) in each particular case. In light of these discrete institutional strengths, a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply.

*Kimbrough, 552 U.S. at 109* (emphasis added) (citations and punctuation omitted).

Here, as set forth below, Mr. Reierson respectfully asks this Court to use its discretion, in accordance with the § 3553(a) factors, to impose a non-custodial sentence, including, if necessary home confinement, because such a sentence would be sufficient but not greater than necessary to comply with the purposes of sentencing.

### VII. APPLICATION OF 18 U.S.C. §3553(A) FACTORS

**THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT**

Mr. Reierson very much understands the seriousness of the offense, and fully accepts responsibility for his transgressions. Moreover, Mr. Reierson and his counsel well recognize the persistent and overarching "J6" narrative and the temptation to over-associate Mr. Reierson with others charged in connection with this event. This fact notwithstanding, this Court should still consider, in mitigation and under 3353, the nature of Mr. Reierson's individual actions on that day as well as his personal history and characteristics.

For these additional reasons, this Court should impose a non-custodial sentence, including, if necessary, one of home confinement, and a period of supervised release deemed appropriate by this Court.

### THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT OF THE LAW, TO PROVIDE JUST PUNISHMENT AND ADEQUATE DETERRENCE, AND TO PROVIDE THE DEFENDANT WITH NEEDED MEDICAL CARE

This Court is tasked with the difficult decision as to what constitutes a "just" punishment for Mr. Reierson. While the Guidelines serve as one very rough benchmark, they fail to adequately and appropriately account for the unique history and characteristics of Mr. Reierson and circumstances of this case.

Here, a within Guidelines range sentence would be unnecessarily high, and far "greater than necessary" to fulfill any of the legitimate aims of sentencing.

Here, Mr. Reierson well appreciates the seriousness of his conduct. However, one is hard-pressed to credibly argue that a limited sentence of home confinement in the present case would *not* adequately reflect the "seriousness of the offense." Such a sentence adequately reflects the "seriousness of this offense," *more than* "promotes respect for the law;" and represents a "just punishment" for the actual offense conduct.

Furthermore, a core finding of research reveals that deterrence is primarily a function of the *certainty* of punishment, not its *severity*.[1] Daniel Nagin, one of the foremost scholars of deterrence in the United States, has found that "the effect of certainty rather than severity of punishment reflect[s] a response to the certainty of apprehension." It is the certainty of punishment, the likelihood of getting caught, prosecuted, and punished, that will deter the general public, not the severity of prison time. Mr. Reierson's conduct in this case has already

---

[1] *See* Daniel S. Nagin, *Deterrence in the Twenty-First Century: A Review of the Evidence*, 42 Crime and Just. 199, 207 (2013).

resulted in certain punishment, a federal felony conviction, which will affect him for the rest of his life.

Mr. Reierson has also already experienced, and will continue to experience, the collateral consequences of his offense conduct. Indeed, he was forced to resign from his beloved, decades-long position of gainful employment at Argonne. He has also incurred the wrath of the Chicago news media by way of its repeated reporting on his case, and in turn many citizens of the Chicagoland area who have commented on and attacked his character as a result.

Deterrence research also demonstrates that longer terms of imprisonment yield diminishing returns for public safety as individuals "age out" of high-crime years.[2] In addition, as this Court is aware, a federal conviction is a stigma that blights one's life forever and has and will continue to have serious and severe consequences on not just Mr. Reierson, but also his family. Such punishment provides a permanent reminder of his wrongdoing, and, for Mr. Reierson, carries a high degree of guilt and shame.

## THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES

Section 3553(a)(6) requires the Court to consider "*the need to avoid unwarranted sentencing disparities among defendants with similar records that have been found guilty of similar conduct.*" 18 U.S.C. 3553(a)(6).

Comparing Mr. Reierson's conduct to that of the other individuals who were convicted of only an 18 U.S.C. § 111(a) offense demonstrates why a sentence of home confinement in this case would be "sufficient, but not greater than necessary" to fulfill all of the legitimate aims of sentencing.

---

[2] Marc Mauer, *Long-Term Sentences: Time to Reconsider the Scale of Punishment*, 87:1 UMKC Law Review 113, 121 (2018).

With respect to defense counsel's request for a non-custodial sentence, if those who breached the U.S. Capitol on January 6, 2021 can be provided with the opportunity to receive a probationary sentence, so too should Mr. Reierson. As of the filing of this Memorandum, there are 79 Capitol breach defendants for whose conduct the Government did not even seek a sentence of incarceration.[3] This number included one who had been convicted of Civil Disorder (Luis Enrique Colon, 1:21-CR-160-TJK) whom the Government did not even seek a period of home detention. In addition, there have been in excess of another 170 Capitol breach defendants for whom the Government sought a sentence of incarceration at sentencing, but Judges in this District refused to impose a period of incarceration.[4]

Finally, there are many defendants where the sentence imposed was less than the sentence requested by the Government, often significantly less. When considering only those defendants whose only charge of conviction was a § 111(a) offense, like Mr. Reierson, there is a total of 53 such defendants as of the filing of this Memorandum.[5] Significantly, Judges in this District imposed a sentence *below* the sentence requested by the Government in 44 (or 83%) of these cases.[6] In some cases, the sentence imposed was drastically less than that requested by the Government. A mere sampling of these include:

- Mark Leffingwell (1:21-cr-00005-ABJ) – Government requested **27 months'** incarceration, sentenced to only **6 months'** incarceration;

- Joseph Leyden (1:22-cr-00314-TNM) – Government requested **27 months'** incarceration, sentenced to only **6 months'** incarceration;

- Adam Jackson (1:22-cr-00230-RC) – Government requested **41 months'** incarceration, sentenced to only **52 weeks'** intermittent confinement **and home detention**;

---

[3] *See* SENTENCES IMPOSED IN CASES ARISING OUT OF THE EVENTS OF JANUARY 6, 2021; updated on October 7, 2024. Retrieved from https://www.justice.gov/usao-dc/capitol-breach-cases.
[4] *Id.*
[5] *Id.*
[6] *Id.*

- Luke Hoffmann (1:23-cr-00329-RDM) – Government requested **51 months'** incarceration, sentenced to only **20 months'** incarceration; and

- Bobby Russell (1:23-cr-00029-APM) – Government requested **30 months'** incarceration, sentenced to only **12 months' and 1 day** incarceration **and 6 months' home detention**.

*Id.*          When comparing Mr. Reierson with other defendants convicted of a § 111(a) offense alone, a limited period of home confinement/home detention would be the most appropriate sentence to avoid sentencing disparities. Fortunately, he did not inflict physical harm to any person, nor did he damage property. He did not bring a weapon. His conduct is consistent with the vast majority of those sentence who received sentences that were far below the suggested Guidelines range.

### COST OF CONFINEMENT

Given Mr. Reierson's history; the nature of the offense; his conduct while on release during the pendency of this case; his family responsibilities; and the fact that he poses no danger to the community whatsoever, it would make absolutely no sense to spend tens of thousands of taxpayer dollars or more to confine him.

### THE KINDS OF SENTENCES AVAILABLE

Justice would clearly *not* be served by incarcerating Mr. Reierson for even a below-Guidelines range custodial sentence. Given his history as a non-violent, law-abiding citizen, this Court should consider an alternative to the recommendation and sentence Mr. Reierson to a sentence of home confinement.

### MR. REIERSON'S EXTRAORDINARILY LOW RISK OF RECIDIVISM

Mr. Reierson presents an extremely low risk for recidivism due to his advanced age, his low Criminal History Category, and his offense conduct in the present matter.

The lack of a risk for recidivism based on these factors is supported empirically in recidivist studies. In its recent Report, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (September 2021), the United States Sentencing Commission (USSC) details the findings of ongoing research of the recidivism of federal offenders. According to the USSC, age and criminal history category are two consistently strong predictors of recidivism.[7] For example, the age distribution data for federal offenders released in 2010 show that while nearly three-quarters (72.5%) of offenders younger than age 21 and nearly two-thirds (64.4%) of offenders aged 21 to 29 were rearrested during the study period, less than one-third (30.8%) of offenders aged 50 to 59 were rearrested. *Id*. Offenders aged 60 and older had the lowest rearrest rates – only 15.9%. *Id*. Mr. Reierson, at age 69, is in the age group with the lowest likelihood of recidivism.

Similarly, criminal history category is strongly correlated with recidivism. The USSC data further show that offenders with zero criminal history points had the lowest rearrest rates – slightly more than one-quarter (26.8%) of offenders with no criminal history points assigned were rearrested during the study period. *Id.* at 26. As indicated in the PSR, Mr. Reierson has zero criminal history points, falling within the lowest criminal history category. See PSR, at ¶ 44.

Though age and criminal history category individually correlate to recidivism, "[c]onsidered together, they are even better predictors of recidivism." *Cotter*, *et al.*, *supra*, at 29. As a group, offenders with zero criminal history points had a rearrest rate of 26.8 percent. *Id.* at 27. Consequently, given his current age of 69 and his criminal history score of zero, with resulting Criminal History Category I, Mr. Reierson presents with the statistically lowest likelihood of recidivism.

---

[7] Ryan Cotter, et al., Recidivism of Federal Offenders Released in 2010, United States Sentencing Commission, September 2021 at 24.

**MR. REIERSON'S POST JANUARY 6 CONDUCT**

Another relevant and telling indicator that should be strongly considered in the present case is the post January 6 conduct of Mr. Reierson. This includes the extensive time period during which Mr. Reierson has been on pre-trial release in connection with the present case. As would be expected, in light of Mr. Reierson's personal history and character, he has been nothing short of letter perfect during his pre-trial release. This Court entrusted him with the privilege of being on release, with extensive conditions. Mr. Reierson responded by demonstrating, as he otherwise has during his entire adult life, that he was worthy of that trust. He has continued to help others whenever and under whatever circumstances are presented. In other words, he has continued to be the type of contributing citizen that we want, and expect to have in our communities.

## VIII.  TERMS OF SUPERVISED RELEASE

**Mandatory Drug Testing:** Mr. Reierson objects only in part. The information presented to this Court constitutes "reliable sentencing information [that] indicates a low risk of future substance abuse" by Mr. Reierson, and therefore allows this Court to ameliorate or suspend this mandatory condition. Since he has no history of being such an abuser, there is simply no reason to expend resources testing him for a problem that does not exist in this 69-year old man.

**WHEREFORE**, Mr. Reierson, by and through his undersigned counsel, respectfully requests that this Court sentence him to a limited term of home confinement, with a term of supervised release to follow, and with such other and further conditions as deemed appropriate by this Court, and for such other and further relief as is appropriate.

                                          **Respectfully submitted,**

                                **By: /s/ Michael I. Leonard**
                                          **Counsel for Mr. Reierson**

**LEONARD TRIAL LAWYERS**
Michael I. Leonard
Matthew A. Chivari
120 North LaSalle St., Suite 2000
Chicago, Illinois 60602
(312)380-6659 (direct)
(312)264-0671 (fax)
mleonard@leonardtriallawyers.com
matthew@leonardtriallawyers.com

## CERTIFICATE OF SERVICE

      The undersigned states that, on October 11, 2024, he EFILED by way of this Court's ECF filing system, the above Defendant's Sentencing Memorandum, which was therefore served upon all counsel of record.

                                **By: /s/ Michael Leonard**
                                          **Counsel for Mr. Reierson**